## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ROOSEVELT DAWSON,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:12-CV-859-Y** |
| | § | |
| **WILLIAM STEPHENS, Director,**[1] | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas.  The Findings, Conclusions, and Recommendation of the United

States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for a writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Roosevelt Dawson, TDCJ-ID #1429326, is in custody of the Texas Department

of Criminal Justice (TDCJ), Correctional Institutions Division, in Huntsville, Texas.

Respondent William Stephens is the Director of TDCJ.

---

[1]Effective June 1, 2003, William Stephens succeeded Rick Thaler as the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Director Stephens "is automatically substituted as a party." FED. R. CIV. P. 25(d).

## C. FACTUAL AND PROCEDURAL HISTORY

On April 4, 2007, a jury found petitioner guilty of murder in the 297th District Court of

Tarrant County, Texas, Case No. 0969997D, and assessed his punishment at sixty years'

confinement. (SHR at 101[2]) Petitioner appealed his conviction, but the Second District Court of

Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals

refused his petition for discretionary review. (SHR at 103-14) *Dawson v. State*, PDR No. 1214-08.

Petitioner also filed a state habeas application challenging his conviction, but the Texas Court of

Criminal Appeals denied relief without written order on the findings of the trial court. (SHR at

cover)

The state appellate court set forth the background facts of the case as follows:

Mary Morgan and appellant dated for a couple of years until Morgan ended their relationship sometime in January 2005. Appellant continued to call Morgan and refused to move on. On February 22, 2005, Morgan and appellant had an angry conversation over the phone for about an hour. Morgan then left her apartment, where she lived with her four children, to go pick up her son Ebony at his grandmother's home when her daughters Ashley and Tempest heard a horn honking and yelling outside. Ashley and Tempest looked outside and saw appellant drive off in their mother's car with Morgan in the passenger's seat sitting with her back against the door. Tempest and Morgan's son, Kedoni, also saw what they believed to be appellant's car parked outside in the parking lot.

Ashley called Ebony and told him that she thought appellant had taken their mother. Ebony and his cousin, Ieshia, got into Ieshia's car to see if they could find Morgan. As Ebony and Ieshia drove towards Morgan's apartment, they spotted Morgan's car at the park. They pulled up and parked right in front of Morgan's car. They saw that appellant was in the car with Morgan, and Ieshia went to the passenger's side of Morgan's car to get her out. However, Morgan was upset and told Ieshia to leave because appellant would hurt "her baby," referring to Ebony. Ieshia then saw that appellant had a gun to Morgan's side, and she backed away from the car. Appellant then took off in the car, and Ebony and Ieshia followed. While

---

[2]"SHR" refers to the state court record of petitioner's state habeas application no. WR-78,234-01.

they were chasing appellant and Morgan, Ieshia called 911. A few blocks later, appellant stopped the car, and Ebony rammed his car into Morgan's car. Appellant then shot Morgan and fired a shot at Ebony and Ieshia. Ebony rammed the car again, and appellant shot Morgan for a second time. Morgan escaped from the car and stumbled toward a nearby house, and appellant drove off. Morgan died shortly thereafter.

Appellant discarded the gun, but before the police arrested him, he confessed to a friend that he had killed someone.

(SHR at 104-05)

### D. ISSUES

Petitioner raises the following issues for relief:

(1)     The trial court erred by not submitting an instruction on the defense of self-defense;

(2)     The evidence is factually insufficient because the trial court submitted a jury charge that allowed a less than unanimous verdict; and

(3)     He was denied effective assistance of counsel.

(Pet. at 6-7)

### E. RULE 5 STATEMENT

Respondent believes the petition is not barred by limitations, subject to the successive-petition bar, or barred by the failure to exhaust available state remedies. (Resp't Ans at 5) 28 U.S.C. §§ 2244(b), (d), 2254(b).

### F. DISCUSSION

#### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *See Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

### 1. Self-Defense Instruction

Petitioner claims the trial court erred by not submitting a jury instruction on self-defense because there was evidence that petitioner did not have the requisite intent to commit capital murder and that his car was struck by the victim's son causing the gun to discharge. (Pet'r Mem. at 2-5) Relying solely on state statutory and case law, then and now, the appellate court addressed the issue as follows:

**Applicable Law**

The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case. An accused is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence. Article 36.14 [of the Texas Code of Criminal Procedure], however, imposes no duty on the trial court to sua sponte instruct the jury on unrequested defensive issues because these issues are not "law applicable to the case"; they are simply issues that were not raised at trial.

**Analysis**

Here, appellant did not request a self-defense instruction[2] nor did he object to the jury charge, which did not include a self-defense instruction. Because appellant did not request the instruction, the trial court did not have a duty to include one in the charge.

[2]The Texas Penal Code states that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.

(SHR 105-06) (citations omitted)

This claim fails to raise a federal constitutional issue warranting relief. It is well settled that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1990). A federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241.

Moreover, a federal habeas court "will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991)); *Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007). The appellate court explicitly found that petitioner waived any error by failing to request a self-defense instruction or object to the charge on this basis at trial, and the court relied on this procedural default to overrule the claim. The state procedural bar is an independent and adequate state ground barring federal habeas review, absent cause and prejudice, such showing not having been demonstrated by petitioner.

### 2. *Unanimous Verdict*

Petitioner claims the evidence was factually insufficient because the trial court submitted a charge allowing a less than unanimous verdict as guaranteed by the Texas Constitution. (Pet'r Mem. at 5-6) Petitioner argues that the "duplicitous indictment impermissibly charged two plots in a single count" and "the charge submitted to the jury allowed it to reach a non-unanimous verdict because the instruction did not apply to the manner and means of committing the offense of murder but applied to different factual offenses." (*Id.* at 10) Relying solely on state constitutional, statutory and case law, the state appellate court addressed the issue as follows:

**Standard of Review**

Appellate review of error in a jury charge involves a two-step process. Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal.

If there is error in the court's charge but the appellant did not object to it at trial, we must decide whether the error was so egregious and created such harm that appellant did not have a fair and impartial trial– in short, that "egregious harm" has occurred.

In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.

**Applicable Law**

A jury verdict in a criminal case is required to be unanimous. A unanimous jury verdict "ensures that the jury agrees on the factual elements underlying an offense," requiring "more than mere agreement on a violation of a statute." To discern what a jury must be unanimous about, appellate courts examine the statute defining the offense to determine whether the legislature "creat[ed] multiple, separate offenses, or a single offense" with different methods or means of commission. "[J]ury unanimity is required on the essential elements of the offense" but is "generally not required on the alternate modes or means of commission." Therefore, it is necessary to identify the essential elements or gravamen of an offense and the alternate modes of commission, if any. This is accomplished by diagraming the statutory text according to the rules of grammar. The essential elements of an offense are, at a minimum: (1) "the subject (the defendant);" (2) "the main verb;" (3) "the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime);" (4) the specific occasion; and (5) the requisite mental state. The means of commission or nonessential unanimity elements are generally set out in "adverbial phrases" that describe how the offense was committed. Such phrases are commonly preceded by the preposition "by."

Because of the possibility of a non-unanimous jury verdict, "separate offenses" may not be submitted to the jury in the disjunctive. A trial court may, however, submit a disjunctive jury charge and obtain a general verdict when alternate theories or "manner and means" involve the commission of the "same offense."

The unanimity requirement is not violated when the jury has the option of choosing between alternative modes of commission. Thus, we must determine whether the jury charge in this case merely charged alternate theories of committing the same offense in the disjunctive or whether it included two or more separate offenses charged disjunctively.

**Analysis**

The grand jury charged appellant in a two paragraph indictment with committing murder under Texas Penal Code section 19.02(b). Section 19.02(b) of the penal code states that a person commits the offense of murder if he

(1) intentionally or knowingly causes the death of an individual; [or]
(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

The jury charge tracked the statutory language of section 19.02 and instructed the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 22nd day of February, 2005, in Tarrant County, Texas, the Defendant, Roosevelt Dawson, did then and there *intentionally or knowingly cause the death of an individual, Mary Morgan, by shooting her with a firearm, or,* if you find from the evidence beyond a reasonable doubt that on or about the 22nd day of February, 2005, in the County of Tarrant and State of Texas, the Defendant, Roosevelt Dawson, did then and there *intentionally, with the intent to cause serious bodily injury to Mary Morgan, commit an act clearly dangerous to human life, namely, shoot her with a firearm, which caused the death of Mary Morgan,* then you will find the Defendant guilty of the offense of Murder as charged in Count Two of the indictment.

Appellant argues that the charge submitted to the jury allowed it to reach a nonunanimous verdict because the instructions did not apply to the manner and means of committing the offense of murder but applied to different factual offenses. We agree with appellant that he is entitled to a unanimous guilty verdict, but we disagree that he was charged with two separate offenses. The jury charge demonstrates that appellant was charged with only one offense: murder.

The court of criminal appeals has determined that the provisions of section 19.02(b) set forth alternative methods or means of committing the same offense. The charge in this case allowed the jury to convict appellant of only one offense, murder, (a) if it found that he intentionally or knowingly caused Morgan's death by shooting her with a firearm or (b) if it found that he intended to cause Morgan serious bodily injury and committed an act clearly dangerous to human life–shooting her with a firearm–that caused Morgan's death. Whether appellant intentionally caused Morgan's death or whether he intended only to cause Morgan serious bodily injury

and committed an act clearly dangerous to human life which caused Morgan's death, only a single crime of murder could have been committed.

Accordingly, appellant was convicted under a statute and jury charge that did not describe different offenses but instead set forth different methods of committing the same offense. Because the trial court did not err in submitting the alternate means of committing murder disjunctively, the jury charge appropriately instructed the jury and did not allow a less than unanimous verdict.

(SHR at 107-13) (emphasis in original) (footnotes and citations omitted).

As with petitioner's previous claim, this claim fails to raise a federal constitutional issue warranting relief. Federal habeas relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Schad v. Arizona*, 501 U.S. 624, 636-37 (1991). The Supreme Court has not held that the United States Constitution imposes a jury unanimity requirement. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Richardson v. United States*, 526 U.S. 813, 821 (1999); *Amador v. Quarterman*, 458 F.3d 397, 412 (5th Cir. 2006); *Hoover v. Johnson*, 193 F.3d 366, 368 & n.2 (5th Cir. 1999). Thus, there is no corresponding federal constitutional right. *Gonzales v. Thaler*, 468 Fed. Appx. 404, 2012 WL 1129272, at *2 (5th Cir. Apr. 4, 2012) (not designated for publication in the Federal Reporter).

### 3. Ineffective Assistance of Counsel

Lastly, petitioner claims he received ineffective assistance of counsel because counsel failed to object to the indictment, which charged "two schemes" and allowed his conviction on a non-unanimous verdict, failed to request a self-defense instruction and/or object to the jury charge omitting such an instruction, failed to move for a judgment of acquittal on the capital murder charge, failed to request an instruction on lesser included offenses, and failed to object to hearsay statements. (Pet'r Mem. at 3-5)

9

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688. A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Strategic decisions following a thorough investigation are "virtually unchallengeable." *Id.* at 690.

Further, where a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003). Under this standard, the state courts' application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

Petitioner was represented at trial by Greg Westfall and Joetta Keene. Counsel Keene responded to petitioner's allegations in an affidavit filed in the state habeas court as follows:

> I represented Roosevelt Dawson on a capital murder charge in Tarrant County Texas in cause #0969997D. The case was in the 297th District Court with Judge E. Young. Greg Westfall was first appointed on the case. The State of Texas announced that

they were seeking the death penalty. At that point, Mr. Dawson was entitled to another attorney and I was appointed as the second chair. As his lawyers, we began by obtaining the entire Tarrant County District Attorney file. We also issued subpoenas for any and all records that related to Mr. Dawson. We subpoenaed everything from his grades school records to all of his employment records. We sought any record that existed that had Mr. Dawson's name on it. After we gathered the discovery and reviewed the same, we began to interview witnesses. We met with several eyewitnesses and went to the crime scene. We canvassed the streets and rang door bells looking for anyone who heard or saw anything. We met with several neighbors and were given access to their homes and their accounts of what they saw.

Judge Young set up a pretrial hearing to determine the scheduling order for the death penalty trial. It was at that hearing that the State of Texas waived the death penalty. They still intended to proceed on the capital murder indictment. Myself and Mr. Westfall prepared for the trial. We listened to the 911 tape recordings and met with the custodian of records who made the tapes. We broke the tapes down and were able to determine that the offense itself was actually contained on the tapes. One of our defenses was to eliminate the kidnapping element. We cross-examined each witness and were able to show the jury that the complainant voluntarily left with Mr. Dawson. Mr. Dawson was found guilty of murder and not of capital murder. At the penalty phase, the State brought the other women who Mr. Dawson had gone to prison for assaulting. We cross-examined them. The jury returned a verdict of less than life. Because this case began as a death penalty trial and ended with a less than life verdict, we were very pleased.

(SHR at 26)

Counsel Westfall also responded by affidavit:

I have read the affidavit of Joetta Keene and believe it is true and correct and hereby adopt it and incorporate it herein by reference. I do want to expand on it on a couple of points.

We did not object to the indictment, however, as the court of appeals pointed out in its opinion, it was not multiplicitous, nor did the jury instructions fail to require a unanimous verdict on the charged offense. We did not move for a directed verdict, but such a motion is not required to preserve error and there would have been no element except, perhaps, kidnapping, which might arguably have merited such a motion. In any event, the jury found that the state had failed to prove kidnapping beyond a reasonable doubt. We did request and received an instruction telling the jury that if they had a reasonable doubt as to whether the state has proved capital murder or murder, they must resolve that in the defendant's favor and convict of murder.

11

We also did not request an instruction on self defense. Frankly, it did not occur to me to do so. If we had made such a request, I am not convinced it would have been granted and if granted, I'm very doubtful it would have been effective.

The claimed aggressor in this case was not the deceased, but her son, who was driving a small SUV and ramming it into the defendant's car while the defendant was allegedly driving away with the deceased in the front passenger seat of his car, having just taken her against her will. The defendant fatally shot the deceased in the side, as I recall, which was to his immediate right, while her son watched from the truck which at that point was behind the defendant's car. Needless to say, as pertains the confrontation between the defendant and the deceased's son, the deceased herself was an innocent victim. Thus, under Texas Penal Code § 9.05, the defendant would have still been guilty at least of manslaughter (assuming firing a pistol from a moving car and shooting the deceased two times would be considered "reckless"). Assuming a conviction to the charge of manslaughter, the same habitual range of punishment would have been available to the jury.

There is another problem with the self defense instruction. The deceased's daughter testified that she witnessed the defendant force the deceased into his car. The deceased's daughter then communicated this to her brother and sister, who drove over in the SUV that ended up in the confrontation. During this same incident there was a confrontation at a park a short time earlier where, the witnesses testified, the defendant showed the gun and the deceased told her daughter to leave before the defendant hurt her son. If a request for a self-defense instruction had been made and granted, then it would have surely come with an additional instruction on provoking the difficulty, which in all probability would have nullified it. Further, this testimony suggests that the deceased's son was using force to protect a third person, which would have had the same effect – it would have made the defendant's force unlawful.

Finally, the defendant shot the deceased not once, but twice. Given this fact, I believe the trial court would have been justified in denying the instruction under the rationale that no reasonable jury could have found that the defendant acted in self-defense.

I am not sure what the defendant is claiming about the hearsay statements of Robert Epps, but my memory is that the defendant basically confessed to Epps that he had shot somebody and was going away for a long time or words to the effect. These were admissions by the defendant and as such they are not even hearsay.

(SHR at 27-28)

Consistent with counsel's affidavits, the state habeas court entered the following findings of

fact:

12.    Mr. Westfall and Ms. Keene did not challenge the applicant's indictment because they did not believe it multiplicitous.

13.    Mr. Westfall and Ms. Keene did not object to the jury instructions because they did not think they failed to require a unanimous verdict.

14.    Mr. Westfall and Ms. Keene did not request a directed verdict because they did not believe one was warranted.

15.    Mr. Westfall does not believe that a self-defense instruction would have been effective since Ms. Morgan was an innocent victim while the applicant's confrontation was with her son.

16.    Mr. Westfall also does not believe that a self-defense instruction would have been effective since the applicant shot Ms. Morgan.

17.    Mr. Westfall did not object to Robert Epps' statements on the basis of hearsay because they were admissions by the applicant.

       . . .

19.    Mr. Westfall and Ms. Keene succeeded in obtaining a lesser verdict of murder than capital murder.

20.    Mr. Westfall and Ms. Keene made strategic decisions not to challenge the applicant's indictment or the trial court's charge.

21.    Mr. Westfall and Ms. Keene provided the applicant with adequate representation guaranteed by the Sixth Amendment.

23.    The following evidence undercuts any likelihood that the outcome of this case would have been different with another counsel or if Mr. Westfall and Ms. Keene had represented the applicant in another manner:

       a.    The applicant and Ms. Morgan were previously involved in a romantic relationship.

       b.    On February 22, 2005, after their break-up, the applicant and Ms. Morgan had a lengthy telephone conversation.

c.      Ms. Morgan soon left her apartment to pick up her son, Ebony, from a relative's house.

d.      A few minutes later, Ms. Morgan's daughter, Ashley, heard the applicant tell her mother to get her "ass" in the car, and then saw her mother in the passenger seat of her car.

e.      After watching the applicant drive away, Ashley called her brother and told him that the applicant had taken their mother.

f.      Ebony and his cousin Ieshia spotted Ms. Morgan's car at a park near her apartment and drove up to it.

g.      When Ieshia opened the passenger door of Ms. Morgan's car, she saw that the applicant had a gun pointed at Ms. Morgan.

h.      Ms. Morgan was upset and feared that the applicant would hurt Ebony.

I.      Ieshia got back in her car, but she and Ebony followed the applicant when he drove out of the park.

j.      Ieshia called 9-1-1 as they followed the applicant.

k.      During the chase, Ebony rammed his mother's car on the driver's side in an attempt to get the applicant to stop.

l.      At some point during the chase, the applicant shot at Ebony and Ieshia.

m.      When the applicant did stop, he pointed his gun at Ms. Morgan's head and fired.

n.      Ebony rammed the car again and the applicant pointed the gun at Mary's back and fired.

o.      Ms. Morgan stumbled from the car into a nearby house where she soon died from the gunshot wound to her back.

p.      The applicant fled the scene, discarded his gun, and confessed to a friend that he had killed someone before eventually surrendering to the police.

14

24.     Given the evidence that the applicant shot Ms. Morgan in the head and back, there is no reasonable probability that the jury would have reached a different result or verdict with counsel other than Mr. Westfall and Ms. Keene.

25.     The applicant was not denied effective assistance of trial counsel by Mr. Westfall and Ms. Keene's representation.

(SHR at 77-79) (citations to the record omitted)

Based on its findings, the state habeas court concluded counsel adequately and independently investigated petitioner's case, fully and adequately prepared for trial, made proper and necessary objections during the trial court proceedings, and had functioned as counsel guaranteed by the Sixth Amendment.  The court further concluded that petitioner had failed to show that but for the alleged acts or omissions of counsel, the result of his trial would have been different.  (SHR at 79-81)  In turn, as noted, the Texas Court of Criminal Appeals denied relief on petitioner's claims without written order, which was an adjudication on the merits.

Deferring to the state courts' resolution of state law matters and counsel Westfall's testimony that even if the jury had been charged on the lesser offense of manslaughter petitioner would have been subject to the same penalty range, the state courts' resolution of petitioner's ineffective-assistance claims is neither erroneous nor objectively unreasonable.  Counsel is not required to make frivolous motions or objections.  *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

## II. RECOMMENDATION

Petitioner's petition for writ of habeas corpus should be DENIED.

15

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until August ____*14*____, 2013. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until August ____*14*____, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

16

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July ___24___, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

17